**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TOMMY E. RENFRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08-CV-29-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that (1) the ALJ failed to properly weigh medical source opinions; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ misapplied the Medical-Vocational Guidelines (the "Grids") to find Plaintiff was not disabled at Step Five, despite nonexertional limitations from symptoms of pain and numbness that should have precluded the ALJ's reliance on the Grids. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

**1. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Tommy E. Renfro, was born on July 25, 1960, and was 43 years old on September 19, 2003, the date he alleged he became disabled. Plaintiff obtained a General Equivalency Diploma in 1978. [R. 25]. Plaintiff has past relevant work as a delivery driver,

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

over-the-road truck driver, receiving clerk, and security officer. [R. 101].

Plaintiff alleges he sustained twisting injuries to his back in a work-related accident on September 19, 2003, causing low back pain and bilateral leg pain. [R.165]. He underwent a course of physical therapy in December 2003, with no improvement in his pain. [R. 141]. An MRI showed disk desiccation at L5-S1, and a diskogram showed an annular tear in that disk, with a positive high level of pain. [R. 163, 228]. Plaintiff underwent a spinal fusion surgery at L5-S1 with segmental instrumentation on March 15, 2004. [R. 160, 165]. Plaintiff was off work for six months, with some improvement in his back pain. He returned to work in October 2004 at light duty, but his back pain reoccurred in January 2005.  His treating surgeon, Dr. Richard Thomas, recommended that Plaintiff stop working until the end of February 2005, when Plaintiff underwent a second surgery to remove the hardware from his first lumbar surgery. [R. 238]. Plaintiff was off work until August 2005, but could not return to his past work or find any other work he could perform with his continuing back pain.

Plaintiff's work capabilities were evaluated on June 28, 2005, at Redbud Physical Therapy. The physical therapist concluded that Plaintiff could sustain work at a sedentary level of exertion for an eight-hour work day. [R. 290]. The therapist found that Plaintiff "self-limited" his efforts on 25 per cent of the tasks, due to pain in his low back and legs. [R. 291]. The therapist also concluded that Plaintiff "does not appear to tolerate static standing and seated postures for more than 5 minutes." The therapist made a detailed evaluation of Plaintiff's functioning in sitting, standing, walking, and bending over to work.  [R. 295].

Dr. Kenneth Trinidad, D.O., consultatively examined Plaintiff on August 1, 2005, in connection with Plaintiff's workers' compensation case. Plaintiff reported constant pain and

spasm in his low back that worsened with bending, stooping, and lifting, and that he had difficulty sitting or standing more than twenty minutes because of back pain. Plaintiff also reported pain, numbness and weakness in both legs, and using a cane to walk. On examination, Dr. Trinidad noted Plaintiff to have an antalgic gait, decreased sensation and weakness in both legs, and tenderness, spasm, and reduced range of motion in the lumbar spine. [R. 315]. Dr. Trinidad diagnosed Plaintiff with a "failed laminectomy syndrome" and bilateral leg radiculitis. Dr. Trinidad opined that Plaintiff required further treatment and evaluation, and could not perform any work activities. [R. 316].

At the Commissioner's request, Dr. Shashi Husain, M.D. consultatively examined Plaintiff on January 24, 2006. On examination, Dr. Husain noted Plaintiff to have normal reflexes in his legs, but diminished sensation in both legs in no definite dermatomal pattern. Dr. Husain concluded Plaintiff's neurological examination appeared normal, but attributed his back pain to arachnoiditis. [R. 350-51].

The Oklahoma Workers' Compensation court requested that Dr. Karl Detwiler, a neurosurgeon, conduct an evaluation and radiographic studies of Plaintiff's back and leg pain. On March 3, 2006, Dr. Detwiler found Plaintiff had full range of motion in his neck, no evidence of atrophy in his arms or legs, symmetric strength in the arm and leg muscles, and intact sensation to light touch, pinprick, and deep pressure in all areas of both legs. Dr. Detwiler scheduled radiographic studies of Plaintiff's thoracic and lumbar spine and an EMG/NCV study of Plaintiff's arms and legs; those studies revealed mildly bulging disks in Plaintiff's thoracic and lumbar spine, and no evidence of radiculopathy or peripheral neuropathy in his arms and legs. [R. 364-65, 369-70]. In a letter to the Workers' Compensation court, dated March 29, 2006, Dr. Detwiler concluded that he could not offer

Plaintiff any further surgical remedy for his back and leg pain, and stated that Plaintiff could return to work with a ten-pound lifting restriction. [R. 371].

Dr. Trinidad performed a second examination for Plaintiff's workers' compensation case on April 14, 2006. Dr. Trinidad again noted Plaintiff's antalgic gait affecting both legs, and use of a cane for ambulation. On examination, Dr. Trinidad found tenderness, spasm, decreased range of motion in the lumbar spine, and decreased sensation in both legs in an L5 distribution bilaterally and weakness in the legs in an L4-5 and S1 distribution. [R. 385-89].

Plaintiff filed an application for a period of disability and disability insurance benefits on September 2, 2005. [R. 81]. The Commissioner initially denied his application on November 2, 2005, and on reconsideration, denied it again on October 4, 2006. [R. 49-52, 54-56]. Plaintiff then filed a Request for Hearing Before an ALJ on October 13, 2005. [R. 57]. ALJ Lantz McClain held a hearing on May 14, 2007. [*See* R. 21-46]. On August 15, 2007, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time through the date of his decision. [R. 17]. Plaintiff subsequently filed a Request for Review of Hearing Decision on September 24, 2007. [R. 5]. The Appeals Council denied his request on November 30, 2007, making it the final decision of the Commissioner. [R. 2-4]. Plaintiff now seeks judicial review of the Commissioner's decision.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. The claimant is not disabled if he can perform his past work. If the claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If the claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined that, through the date of his decision, (1) Plaintiff met the insured status requirements of the Social Security Act; (2) Plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) Plaintiff had status post fusion at L5-S1, status post hardware removal, and degenerative disk disease, all of

---

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in Social Security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

which were considered severe impairments; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff had the residual functional capacity to perform sedentary work; (6) Plaintiff was unable to perform his past relevant work; (7) Plaintiff was born on July 25, 1960, and was 43 years old on his alleged disability onset date, making him a "younger" individual, age 40-45; (8) Plaintiff had a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability due to Plaintiff's age; and (10) considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs in the national economy that Plaintiff could have performed, pursuant to the Grids. [R. 12-17]. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2001, the date last insured. [R. 17].

## 4. REVIEW

### A.    The ALJ's Weighing of Medical Source Evidence.

Plaintiff's arguments focus on the ALJ's alleged failure to fully discuss the medical evidence two physicians provided when evaluating Plaintiff in connection with his workers' compensation claim. Plaintiff asserts the ALJ erred in failing to discuss Dr. Kenneth Trinidad's observations and medical findings from two examinations conducted at the request of Plaintiff's workers' compensation attorney. Plaintiff contends that the ALJ erred in relying on an independent evaluation by Dr. Karl Detwiler, which the Workers' Compensation court requested. Plaintiff also alleges the ALJ erroneously relied on a functional capacity evaluation Plaintiff's physical therapist conducted, in finding Plaintiff

7

could perform the full range of sedentary work, and thus was not disabled at step five of the sequential evaluation process.

### 1. Dr. Trinidad's and Dr. Detwiler's Examinations and Conclusions.

On August 1, 2005, Dr. Trinidad summarized his examination observations and conclusions in a letter to Plaintiff's workers' compensation attorney. Dr. Trinidad noted Plaintiff's complaints of constant pain and spasm in his low back that worsened with bending, stooping and lifting, and difficulty with sitting or standing more than twenty minutes at a time, due to back pain. Plaintiff also complained of pain and numbness going into both legs, and bilateral leg weakness. Plaintiff stated that he frequently used a cane for support while walking. Dr. Trinidad observed that Plaintiff had an antalgic gait affecting both legs, but found no evidence of atrophy in his legs. Dr. Trinidad noted tenderness and spasm in the lumbar spine from L4 through S1 bilaterally, decreased range of motion in Plaintiff's hips and lumbar spine, and decreased sensation and weakness in both legs. Dr. Trinidad further noted that Plaintiff's deep tendon reflexes were symmetric and his toes were "downgoing." [R. 315]. Dr. Trinidad concluded Plaintiff required further treatment and evaluation, including referral to a neurosurgeon and diagnostic studies to rule out further disk derangement. If a neurosurgeon did not recommend additional surgery, Dr. Trinidad recommended that Plaintiff be referred to a pain management specialist. Dr. Trinidad ultimately concluded that Plaintiff remained temporarily totally disabled. [R. 316].

Dr. Karl Detwiler, a neurosurgeon, examined Plaintiff at the request of the Workers' Compensation court, and summarized his examination observations in a letter to the court on March 3, 2006. Dr. Detwiler noted Plaintiff's complaints of pain that radiated up and down his spine, headaches, right arm and shoulder pain, pain throughout his legs, and

8

pain in his tailbone. Plaintiff stated that his pain was continuous, and exacerbated with sitting, standing, walking, bending, lying on his back, increased activity and movement of his head or neck. Plaintiff also complained of constant weakness in his right leg, and noted that his back and leg pain occasionally caused him to lose the function of both legs. [R. 374]. On examination, Dr. Detwiler found Plaintiff had full range of motion in his neck, no evidence of atrophy in his arms or legs, symmetric strength in the arm and leg muscles, and intact sensation to light touch, pinprick, and deep pressure in all areas of both legs. Dr. Detwiler concluded that Plaintiff displayed "normal ambulation," but also noted that Plaintiff carried a cane, and said he used it when his legs "occasionally collapse[d]." [R. 374-75.]

Dr. Detwiler then scheduled a lumbar myelogram, postmyelogram CT and EMG/NCV studies of both legs for the next day. [R. 376]. The lumbar myelogram revealed a status post lumbar fusion at level L5-S1 and mild degenerative changes at levels L3-4 and L4-5. The myelogram CT scan showed a mildly bulging disk at level T12-L1 that contacted the spinal cord, and a mildly bulging disk at level L4-5. [R. 364-65]. On March 14, 2006, Plaintiff underwent an EMG/NCV study, which revealed normal strength and deep tendon reflexes in his legs, with some decreased sensation to light touch in his right foot and leg. The study otherwise was normal, with no evidence of plexopathy, radiculopathy or a generalized peripheral neuropathy involving either leg. [R. 369-70]. In summarizing the result of the studies and his examination of Plaintiff for the Workers' Compensation court on March 29, 2006, Dr. Detwiler concluded that he could not offer Plaintiff any further surgery for relief of his symptoms, and that Plaintiff had reached maximal medical improvement. Dr. Detwiler stated that he would keep the same

9

restrictions on Plaintiff's activities, and that Plaintiff could return to work "with these restrictions." [R. 371].

Approximately two weeks later, on April 14, 2006, Dr. Trinidad again examined Plaintiff at the request of his workers' compensation attorney. Dr. Trinidad reviewed Dr. Detwiler's reports to the Workers' Compensation court, and noted Plaintiff had been released from care with a ten-pound lifting restriction. Dr. Trinidad noted the same complaints of back and leg pain and leg weakness that Plaintiff made in his first examination. Dr. Trinidad again observed that Plaintiff had an antalgic gait affecting both legs, and noted that Plaintiff used a cane for ambulation. Dr. Trinidad again found no evidence of atrophy in Plaintiff's legs. He noted tenderness and spasm in the lumbar spine from L4 through S1 bilaterally, decreased range of motion in Plaintiff's hips and lumbar spine, decreased sensation in both legs in an L5 dermatomal distribution, and weakness in the legs in an L4, L5 and S1 distribution. Dr. Trinidad further found that Plaintiff's deep tendon reflexes were symmetric and his toes were "downgoing." Dr. Trinidad noted that Plaintiff was not considered a surgical candidate, and stated that Plaintiff's pain and other symptoms required "ongoing medications and periodic physician follow-up." [R. 386-87]. For workers' compensation program purposes, Dr. Trinidad assessed Plaintiff with a 55 percent permanent partial impairment. [R. 389].

In his decision, the ALJ correctly noted that the standards for assessing impairment under the State Workers' Compensation laws and the Social Security disability program have different objectives.[4] The ALJ also was correct in stating that he could not give

---

[4]"[T]he workers' compensation . . . proceedings are entirely different and separate from a claim under the Social Security Act, with different parties, different evidentiary standards, and

controlling weight to "a workers' compensation finding of temporary total disability."[5] However, in giving "only some weight to the claimant being on temporary disability pursuant to state law," the ALJ did not address the weight he assigned to Dr. Trinidad's observations and conclusions based on two examinations. While the ALJ appears to cite Dr. Detwiler's findings of 5/5 muscle strength, intact sensation in Plaintiff's legs, normal ambulation and normal EMG/NCV studies as evidence that contradicted Dr. Trinidad's conclusions, the ALJ did not state how he weighed, and then resolved, the inconsistency between those two physicians' findings under the regulatory factors at 20 C.F.R. §404.1527(d). Social Security Ruling 96-8p states that in "all cases in which symptoms, such as pain, are alleged, the RFC assessment must . . . [c]ontain a thorough discussion and analysis of the objective medical and other evidence . . . [i]nclude a resolution of any inconsistencies in the evidence as a whole [and] [s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8p ,1996 WL 374184 at *7 *(*S.S.A. July 2, 1996). The ALJ failed to comply with this requirement in his decision. Social Security Ruling 96-9p states that the ALJ's "RFC assessment must include a narrative that show the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in

---

different bodies of law governing their outcomes." *Jones v. Barnhart*, 53 Fed. Appx. 45, 47(10th Cir. 2002).

[5]*See*, 20 C.F.R. §404.1504 ("a determination made by another agency that you are disabled or blind is not binding on us."); *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions,* SSR 96-2p, 1996 WL 374188 at *2 *(*S.S.A. July 2, 1996)("opinions from sources other than treating sources can never be entitled to 'controlling weight'").

file was considered in the assessment." *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work,* SSR 96-9p, 1996 WL 374185 at *5 *(*S.S.A. July 2, 1996). The ALJ failed to comply with this requirement as well.

### 2.    The Functional Capacity Evaluation.

Plaintiff also alleges that the ALJ erred in his assessment of the functional capacity evaluation that Plaintiff's physical therapist conducted on June 28, 2008. Plaintiff alleges that the ALJ addressed only the ultimate conclusion of Plaintiff's ability to perform sedentary work from that evaluation, and not the therapist's statements that support Plaintiff's allegations that he cannot sit or stand in excess of twenty minutes at a time. In particular, Plaintiff points to the therapist's statement that Plaintiff "did not appear to tolerate static standing and seated postures for more than five minutes," as evidence supporting Plaintiff's need for a sit/stand option in the workplace. Plaintiff contends that his need for a sit/stand option to perform work on a regular and continuing basis, would prevent him from being able to perform the full range of sedentary level work, causing the ALJ to err in applying the Grids to find Plaintiff was not disabled at Step Five.

The Commissioner argues that the therapist's observation that Plaintiff engaged in "self-limiting behavior" during the functional capacity evaluation should diminish the weight given to the comment of Plaintiff's inability to tolerate sitting or standing for more than five minutes. Def.'s Resp. Br. at 7. However, the ALJ did not make this argument in his decision.[6] The ALJ similarly did not address the therapist's comment of Plaintiff's inability

---

[6] *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (the court may not adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from that decision)

to tolerate sitting and standing in excess of five minutes.

In his decision, the ALJ only noted that the functional capacity assessment "demonstrated that the claimant could perform sedentary work for an 8-hour day." [R. 15]. However, the ALJ did not discuss the therapist's assessment of Plaintiff's ability to perform specific functions in sedentary work. The ALJ did not address the therapist's finding that Plaintiff could "frequently" sit and walk, but could only "occasionally" stand. The ALJ also failed to note the therapist's finding that Plaintiff could "never" work bent over, either while sitting or standing/stooping. [R. 294].

The Commissioner requires that the ALJ assess RFC on a "function-by-function basis," and after that, the RFC can "be expressed in terms of the exertional levels of work," such as sedentary. SSR 96-8p, 1996 WL 374184 at *1.[7] The physical therapist's finding that Plaintiff could "frequently" sit and walk would allow Plaintiff to perform eight hours of work that required sitting and walking. However, the ALJ failed to consult the vocational expert, and then consider whether the "occasional" limitation in standing, and the finding that Plaintiff could "never" bend over while sitting or standing (stooping)[8] would

---

[7] SSR 96-8p cautions that "it is not invariably the case that treating the activities [functions] together will result in the same decisional outcome as treating them separately," and "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." 1996 WL 374184 at *3, 5. In his regulations, the Commissioner states, "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your [RFC] for work activity on a regular and continuing basis." 20 C.F.R. §404.1545(b).

[8] The Commissioner defines "stooping" as bending the "body downward and forward by bending the spine at the waist." *Program Policy Statement Titles II and XVI: Determining Capability to Do Other Work - The Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *6 (S.S.A. November 30, 1982). That Ruling notes that "[b]y its very nature, work performed primarily in a seated position entails no significant stooping." *Id.* at *5. However, that statement does not address the physical therapist's finding that Plaintiff could "never" work bent

significantly erode the sedentary occupational job base. The Commissioner recognizes that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations [and a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  SSR 98-9p, 1996 WL 374185 at *8. The Commissioner also recognizes that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will [and i]n cases of unusual limitation of ability to sit or stand, a [vocational source] should be consulted to clarify the implications for the occupational base."  *Policy Program Statement Titles II and XVI: Capability to do Other Work - the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations within a Range of Work or Between Ranges of Work,* SSR 83-12, 1983 WL 31253 at *4 (S.S.A. February 26, 1979).

While the ALJ could rely on the physical therapist's ultimate conclusion that Plaintiff could perform sedentary work on a sustained basis for eight hours a day, the ALJ must show that he considered all parts of that functional capacity evaluation and explain how he weighed the other portions of that report in making his RFC assessment. "The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability."  *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, SSR 96-5p, 1996 WL 374183 at *5 (S.S.A. July 2, 1996). "An ALJ is not entitled to pick and choose

---

over while sitting. [R. 294].

through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga*, 482 F.3d at 1208. The ALJ failed to provide that necessary explanation in his decision for how he considered the therapist's evaluation of separate functions within the ultimate conclusion of Plaintiff's ability to perform sedentary work. Thus, the ALJ appears to have adopted just that part of the functional capacity assessment which supported his finding that Plaintiff could perform the full range of sedentary work, and he ignored his duty to assess Plaintiff's RFC on the "function-by-function" basis the Commissioner's Rulings require.

### B.  Credibility Determination.

The Commissioner requires the ALJ to "consider the entire case record" in evaluating credibility issues, and to provide "specific reasons for the finding on credibility, supported by the evidence in the case record . . . and . . . sufficiently specific to make clear" the weight the ALJ gave to the claimant's statements and the reasons for that weight. *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 at *1-2  (S.S.A. July 2, 1996). The ALJ gave several reasons for finding Plaintiff was not entirely credible as to the severity of his pain and other symptoms. [R. 15-16].

The ALJ first addressed Plaintiff's allegation that he could not afford medical treatment. The ALJ then reasoned,

> If [Plaintiff] were in the constant and disabling painful condition as alleged, it is reasonable to assume that he would exhaust every means possible to obtain relief of that pain. There are public facilities available to those who do not have insurance or who are unable to pay for medical care. [Plaintiff] has provided no evidence that he has sought and been denied medical treatment from [his] treating sources or from indigent care facilities run by

various government agencies.

[R. 15-16]. However, the ALJ did not question Plaintiff at the hearing concerning his efforts to obtain either treatment or relief for his pain. The ALJ did not question Plaintiff about what public health facilities were available to him, and whether he had sought treatment at those facilities. Social Security Ruling 82-59 states that, when determining whether the claimant has a justifiable cause for not pursuing treatment, the ALJ may allow the disability claim where "free or subsidized source of treatment" is not "reasonably available in the local community." *Program Policy Statement Titles II and XVI: Failure to Follow Prescribed Treatment,* SSR-82-59, 1982 WL 31384 at *4 (S.S.A. November 30, 1982). That Ruling requires that the ALJ must explore "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.)" and document the contacts the claimant has made with those resources and the claimant's financial circumstances. *Id.* The ALJ failed to develop the evidence at the hearing concerning the health facilities that were reasonably available to Plaintiff, whether Plaintiff's financial circumstances allowed him to obtain treatment at those facilities, and to document any contacts Plaintiff may have had with such facilities. Without the proper development of the evidence SSR 82-59 requires, this reason for discounting Plaintiff's credibility appears to be based on speculation, instead of substantial evidence.

The ALJ next concluded that Plaintiff's "treating physicians did not place any functional restriction on his activities that would preclude sedentary work activity with the previously mentioned restrictions." [R. 16]. The record does not reflect that Plaintiff's treating physicians were asked about functional restrictions on his activities. At the hearing, the ALJ did not question Plaintiff to learn if such restrictions had been placed on

16

him; the ALJ did not then advise Plaintiff that the ALJ considered such restrictions pertinent to the issue of his credibility.  The duty to recontact the treating physician belongs to the ALJ, rather than the claimant, when the record is deemed "inadequate."[9] Furthermore, the ALJ may not rely on the "absence of evidence" as evidence affecting Plaintiff's credibility at step five, particularly when it was within the ALJ's ability to ascertain if such evidence even existed.[10]

The ALJ also concluded that Plaintiff's "daily activities appear restricted, but these restrictions are self-imposed." [R. 16].  The ALJ gave no examples nor referred to any specific daily activity to illustrate the basis for this reason. Because it lacks any explanation or evidentiary basis, this reason is "a conclusion in the guise of findings."[11]  "Evidence is not substantial if it . . . constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.3d 1371, 1374 (10th Cir. 1992).

The ALJ failed to support his credibility determination with substantial evidence, and he failed to apply the correct legal standards in evaluating Plaintiff's credibility.  The ALJ failed to make a credibility determination that would inform either Plaintiff, or the Court, which of Plaintiff's statements of pain and other symptoms the ALJ did not find believable.

**C.    Step Five Determination Based upon the Medical-Vocational Guidelines.**

At Step Five, the ALJ denied Plaintiff disability benefits, finding that he could

---

[9] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

[10] *Thompson v. Sullivan*, 987 F.2d 1482, 1491(10th Cir. 1993); *Baker v. Bowen*, 886 F.2d 289, 291-92 (10th Cir. 1990).

[11] "[F]indings on credibility should be linked to specific evidence, and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

17

perform a number of sedentary, unskilled jobs in the national economy, based on the Grids. [R. 17]. Plaintiff contends the ALJ's reliance on the Grids was improper, given that Plaintiff's pain from his degenerative disk disease significantly limited his functioning.

The Grids may be used at Step Five only when a claimant is able to perform the full range of exertional capabilities, i.e., the full range of sedentary work. Because the Grids "consider only impairments resulting in exertional limitations,. . . . they cannot be used when a nonexertional impairment, such as pain, limits a claimant's ability to perform the full range of work in a particular RFC." *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir. 1985). In *Teter*, as here, the ALJ applied the Grids after rejecting the claimant's pain as not credible and finding the claimant could perform the full range of sedentary work. While recognizing that the application of the Grids would be "upheld if . . . supported by substantial evidence," the Tenth Circuit found that the ALJ "selectively" read the medical reports he relied upon as support for his RFC determination. *Id.* at 1105-06. The ALJ here appears to have similarly erred, in (1) failing to explain how he resolved conflicts in the medical evidence, and (2) failing to address the physical therapist's specific functional limitations in bending over and standing as possible factors eroding the sedentary occupational base at Step Five.

The ALJ may not automatically or mechanically apply the Grids, but must consider all the relevant facts in determining whether nonexertional limitations diminish the claimant's ability to perform other work. *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987); *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). The ALJ failed to consider all the relevant facts in Plaintiff's case, in applying the Grids to find Plaintiff was not disabled at step five. Accordingly, the Court finds that the ALJ's decision should be

reversed and remanded for further administrative proceedings.

IT IS SO ORDERED this 22nd day of December, 2008.

Sam A. Joyner
United States Magistrate Judge